UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
V. ) No. 2:08-CR-109
)
JIMMY FOX )

## MEMORANDUM OPINION AND ORDER

On January 28, 2009, the defendant filed a motion to suppress all evidence seized in a July 7, 2008, search of a residence he shared with Kelly Leonard,[1] pursuant to a search warrant, and all evidence seized from his automobile pursuant to the same warrant and all incriminating statements made by him as "fruit of the poisonous tree." [Doc. 24]. By separate motion, Fox sought suppression of his statements made to law enforcement officers during the search because, he argued, the statements were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). [Doc. 21].

The motions were referred to the United States Magistrate Judge for a Report and Recommendation ("R&R") pursuant to the standing order of this Court and 28 U.S.C. § 636. The Magistrate Judge conducted an evidentiary hearing and, on March 10, 2009, filed his R&R recommending that both motions be denied. [Doc. 39]. Before the Court are Fox's objections to the portion of the R&R which recommended denial of the motion to suppress all evidence seized

---

[1] Leonard has been indicted in case No. 2:08-CR-102 for her alleged involvement in a large scale marijuana trafficking conspiracy.

pursuant to the search warrant on July 7, 2008, [Doc. 24].² After careful and *de novo* consideration, and for the reasons which follow, the defendant's objections will be OVERRULED and the R&R will be AFFIRMED AND ADOPTED.

**I.     Facts**

On July 3, 2008, Special Agent Michael Templeton of the Drug Enforcement Administration made application for a search warrant to search 12 separate locations, including 801 Mullins Street, Johnson City, Tennessee, the residence shared by Fox and Leonard. Agent Templeton submitted one affidavit to the Magistrate Judge in support of his request for all 12 warrants. The search warrant for 801 Mullins Street was executed by Agent Templeton and various other law enforcement officers on July 7, 2008, at approximately 3:30 p.m. During the search, officers found user quantities of marijuana, digital scales, a photograph of Fox smoking marijuana, a two shot Derringer, and a "duty belt" and an empty holster customarily worn by a law enforcement officer. After Fox arrived at the Mullins Street address at approximately 5:30 p.m. on July 7, officers searched his vehicle and found a handgun and ammunition. Both Fox and Leonard made incriminating statements to Agent Templeton during the search on July 7.

At the time of the July 7 search, Fox apparently served as a reserve deputy for the Unicoi County Sheriff's Department and was an elected constable for Washington County, Tennessee. He had previously been employed as a detention officer for the Washington County Sheriff's Department and had worked for the Bluff City Police Department. Subsequent to the search, Fox was hired as a jailer by the Unicoi County Sheriff's Department. Leonard informed the officers that the Derringer belonged to Fox and the handgun and ammunition found in the vehicle were

---

² Fox does not appeal the recommended denial of his motion made pursuant to *Miranda v. Arizona*, [Doc. 21], and has thus waived any objections to that portion of the R&R. *Thomas v. Arn*, 474 U.S. 140 (1985).

apparently carried by the defendant in the course of his duties as a constable.[3]

The application for a search warrant presented to the Magistrate Judge on July 3, 2008, was supported by the forty-four (44) page affidavit of Agent Templeton. As a whole, the affidavit set out details of a major marijuana trafficking organization lead by Jose Colunga, operating in the Eastern District of Tennessee and elsewhere. The affidavit outlines Agent Templeton's years of experience in "investigations involving narcotics, drug trafficking, and drug trafficking related money laundering investigations and other violations of the Controlled Substances Act," and his extensive training as a law enforcement officer, especially as related to the detection and investigation of federal narcotics violations. Affidavit, Doc. 18-5, ¶ 1. The affidavit generally outlines the results of a joint investigation which began on November 7, 2007, into the drug trafficking organization led by Colunga.

In May, 2008, according to the affidavit, a confidential source (CS1), later proven reliable, provided information regarding the Colunga drug trafficking organization. CS1 had known Colunga since 2005 and had witnessed Colunga obtain and redistribute thousands of pounds of marijuana in East Tennessee. CS1 identifed Juan Colunga, the brother of Jose Colunga, as assisting Jose Colunga in marijuana trafficking and provided information on the location of a "stash house" located in an apartment complex in Gray, Tennessee, operated by Juan and Jose Colunga's sister and brother-in-law. *Id.*, ¶ 24. CS1 identified several persons, including Kelly Leonard, who "assisted in distributing marijuana," provided the names of the sources of marijuana who supplied marijuana to

---

[3] Elected constables have full law enforcement authority but are not employees of the county sheriff's department. See T.C.A. § 8-10-101 *et seq*.

3

Colunga and provided details of wire and currency transfers as payment for marijuana. *Id.*, ¶ 25.

On May 17, 2008, Agent Templeton and other agents conducted surveillance of Colunga and CS1. At 3:35 p.m., Agent Templeton observed Colunga and CS1 arrive at the residence of Leonard at 801 Mullins Street, Johnson City, Tennessee. Colunga and CS1 met with Leonard and Fox for the next 30 minutes. Most of the meeting took place in a covered carport at one end of the residence around a yellow Kawasaki motorcycle, registered to Fox. CS1 later reported that Colunga planned to trade Leonard three pounds of marijuana for the motorcycle. *Id.*, ¶ 26.

On May 29, 2008, CS1 wore a concealed recording device during a conversation with Colunga. CS1 and Colunga discussed making a marijuana debt and debtor list for Colunga. Colunga told CS1 the individuals who owed money should be listed by code names. One of those individuals was Kelly Leonard, code name Beneficial. The list indicated that Leonard was "paid in full." Several other individuals were listed along with their code names and either amounts owed or the notation "paid in full." Id., ¶ 37. On June 3 and 9, 2008, Agent Templeton obtained from Johnson City Power Board, through the use of administrative subpoenas, records which confirmed that the power at 801 Mullins Street, activated on October 29, 2007, was in the name of Leonard. *Id.* ¶ 45.

Agent Templeton concluded, based on the information in the affidavit, that Jose Colunga and other individuals, including Leonard, "have been engaged in large scale marijuana drug trafficking over an extended period of time" and that he believed that evidence of their drug trafficking was currently, among other places "upon the premises . . . of the residence of Kelly Leonard" located at 801 Mullins Street, Johnson City, Tennessee. *Id.*, ¶ 52. Based on his years of training and experience, the affidavit of Agent Templeton outlined in detail the common habits and practices of

4

drug traffickers and listed a host of items associated with drug trafficking commonly stored at the residence of a person involved in drug trafficking. *Id*., ¶ 2.

**II. Analysis**

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, . . . ." *U. S. Const*. Amend. IV. The Supreme Court has established that a warrant must be upheld as long as the "magistrate had a 'substantial basis for ... concluding' that a search would uncover evidence of wrongdoing . . . ." *Illinois v. Gates*, 462 U.S. 213 (1983). An issuing judge may find probable cause to issue a search warrant when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *Gates*, 462 U.S. at 238).

In order to be able to properly determine whether probable cause exists sufficient to issue a warrant, the magistrate must be presented with an affidavit containing adequate supporting facts about the underlying circumstances, either from the direct knowledge of the affiant or from reliable hearsay information; bare conclusions are not enough. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). In making this probable cause determination, the issuing judge must undertake a "practical, common sense" evaluation of "all of the circumstances set forth in the affidavit before him." *Laughton*, 409 F.3d at 747 (quoting *Gates*, 462 U.S. at 238). The affidavit or warrant request "must state a nexus between the place to be searched and the evidence sought." *United States v. Bethal*, 245 Fed. Appx. 460, 2007 WL 2286541 (6th Cir. 2007).

Neither the issuing judge nor a reviewing court should engage in line-by-line scrutiny of the warrant application's affidavit. *Id.* at 465; *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 246 n.14). Rather, the courts should take a totality of the circumstances

5

approach in their review of the affidavit, and the courts may afford "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [the courts are] entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense." *Id.* (quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)).

In drug cases, while it is true that "evidence of involvement in drug trafficking does not automatically establish probable cause to search any location connected with the wrongdoer," *United States v. Shultz*, 14 F.3d 1093 (6th Cir. 1994), the Sixth Circuit has repeatedly held, however, that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking. See *United States v. Williams*, 544 F.3d 683 (6th Cir. 2009) and cases cited therein. As noted in *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *vacated in part on other grounds*, 546 U.S. 803, in cases involving drug traffickers engaged in "continuing operations," the "lack of a direct known link between the criminal activity and the residence [] becomes minimal."

The defendant argues that Agent Templeton's affidavit contains insufficient facts to establish probable cause to search Leonard's residence and fails to establish a sufficient nexus between the evidence of drug trafficking sought and Leonard's residence at 801 Mullins Street. While apparently conceding that there was probable cause for an arrest of Leonard for drug trafficking, Fox argues that evidence of Leonard's involvement in drug trafficking does not automatically establish the required nexus. Much of Fox's motion, and his objections to the R&R, is devoted to what is <u>not</u> in the affidavit, *e.g.*, no information that the informant had ever been inside Leonard's residence, no allegation that Leonard "ever distributed drugs to or from her residence." Further, he argues that

6

"less than a page [of the 44 page affidavit] was devoted to facts relating specifically to Ms. Leonard" and that the factual allegations regarding Leonard "are sparse in comparison to that of others."

As an initial matter, this Court's determination as to the sufficiency of the affidavit is confined to the four corners of the affidavit itself, making defendant's arguments about what is <u>not</u> in the affidavit completely irrelevant. *United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006); *Laughton*, 409 F.3d at 752. This Court, like the issuing judge, must determine the sufficiency of the affidavit based on what it does contain, rather than what it might have omitted. While the probable cause showing might have been stronger had the affidavit contained the information noted by the defendant, that does not change the Court's analysis as to the sufficiency of the affidavit itself.

The Magistrate Judge found, and this Court agrees, that when read together, the paragraphs of the affidavit provided a basis for a reasonable inference that evidence pertaining to drug trafficking would be found at the residence. The affidavit establishes, based on information provided by a reliable confidential source, that Jose Colunga was assisted in distributing marijuana by Kelly Leonard. While the defendant characterizes this as a conclusory allegation, the affidavit establishes that the information was given by a confidential source who had personally witnessed Colunga's distribution of thousands of pounds of marijuana. A reasonable inference is that the affidavit establishes that CS1 identified Kelly Leonard as assisting Colunga in distributing marijuana based upon his personal observations. In addition, however, the affidavit establishes considerably more. On May 17, 2008, law enforcement agents conducted surveillance of Jose Colunga and CS1 who went to the residence of Leonard located at 801 Mullins Street. While at the residence, they discussed a plan for Colunga to trade Leonard three pounds of marijuana in exchange for a motorcycle parked in the covered carport attached to Leonard's residence. Then, later that same

7

month, Templeton overheard a conversation between CS1, who wore a concealed recording device, and Jose Colunga. During that conversation, they discussed the preparation of a list of debtors that owed money to Colunga for marijuana. The names of these individuals were listed by code names, along with the amount owed or a notation of "paid in full." The name of Kelly Leonard, code name Beneficial, was listed with the notation "paid in full." A reasonable inference to be drawn from this is that Kelly Leonard was someone who bought marijuana from Colunga on credit and that they had an ongoing relationship. Given Agent Templeton's averment in the affidavit, based upon his training and experience, that individuals identified in the affidavit, including Leonard and Juan Colunga, were engaged in a multi-state marijuana trafficking organization responsible for trafficking hundreds of pounds of marijuana in the East Tennessee area and that persons involved in such an ongoing conspiracy typically stored at their residences certain instrumentalities and tools of the trade, including drugs and money, the affidavit clearly contains the minimal allegations required to establish a sufficient nexus between evidence of drug trafficking sought and Leonard's residence at 801 Mullins Street.

One last issue raised by the defendant bears some discussion. The defendant, in his objections, argues that, by the time the search warrant application was presented on July 3, 2008, "the officers knew [the three pound marijuana exchange for the motorcycle] had not occurred." He further argues that Agent Templeton knew by his canvassing of the residence prior to the execution of the search warrant that the transaction had never taken place. In support of his conclusion, he points out that the motorcycle remained on the carport on July 7, 2008. Even assuming that the presence of the motorcycle in the carport on July 7 supports the conclusions drawn by Fox about the status of the planned three pound marijuana exchange, it is unclear what specific argument he makes

8

related to that information. Fox does not contend that the affidavit contained materially false affirmative statements; at best, the affidavit omits potentially exculpatory information, *i.e.*, that the three pound exchange of marijuana <u>may</u> not have occurred. An affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information. *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). In addition, such an omission from an affidavit, being beyond the four corners of the affidavit, is generally irrelevant to an assessment of probable cause. See *Laughton*, 409 F.3d at 751-52. The fact that Agent Templeton omitted this potentially exculpatory information from the affidavit, and that the Magistrate Judge was not informed of it, is, therefore, irrelevant.

Lastly, although neither the defendant nor the Magistrate Judge specifically mention the good faith exception, the defendant does make arguments which could be interpreted as an argument that the *Leon* good faith exception would not apply in this case. In *Leon*, the Supreme Court addressed the "question whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon*, 468 U.S. 897 (1984). Thus, even if probable cause is not established by the affidavit, the evidence will not be excluded so long as the officer's reliance on the warrant was objectively reasonable. However, the good faith exception is inapposite in four situations: (1) where the issuing magistrate was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where

9

the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient. *Id*. at 923.

The defendant makes no allegation that the issuing magistrate failed to act in a neutral and detached fashion, that the affidavit was a "bare bones" affidavit or that the issuing magistrate was mislead by the submission of false information. He does, appear, however, to argue that the officer's reliance on the warrant was not in good faith or objectively reasonable because of the presence of the motorcycle on the carport both before and at the time of the execution of the search warrant. This argument fails, however, because omissions in an affidavit are generally irrelevant to the court's assessment of good faith as well. "Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in the affidavit." *Laughton*, 409 F.3d at 751-52. Even if this affidavit failed to provide the minimal information necessary to provide a connection between drug trafficker Leonard's drug trafficking activities and her residence, the evidence seized as a result of the execution of the warrant, and the incriminating statements by Leonard and Fox, would still be admissible under the good faith exception.

### III.     Conclusion

For the reasons set forth herein, and for the reasons stated in the Magistrate Judge's R&R, the defendant's objections to Magistrate Judge Inman's Report and Recommendation, [Doc. 41],

are **OVERRULED**. The Report and Recommendation of the Magistrate Judge, [Doc. 39], is **AFFIRMED** and **ADOPTED**.

So Ordered.

ENTER:

<span style="margin-left:40%">s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE</span>